**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

**ATLANTIC RIM EQUITIES, LLC,**

                                   **Plaintiff,**

   **v.**                                                                    **1:04-cv-2647-WSD**

**SLUTZKY, WOLFE & BAILEY,
LLP, et al.,**

                                   **Defendants.**

## ORDER

This matter is before the Court on Plaintiff Atlantic Rim Equities, LLC's

("Plaintiff") Motion for Partial Summary Judgment as to Liability of Defendants

[27].[1]

---

[1]  This matter is also before the Court on Plaintiff's Motion to Strike Defense
Affidavits [45].  Plaintiff moves to strike three affidavits submitted by Defendants in
response to Plaintiff's motion for partial summary judgment on the grounds that the
affidavits are substantively and procedurally defective.  Plaintiff did not file a brief
in support of its motion as required by the Court's local rules, apparently relying
instead on arguments presented in its Reply Brief in Support of Plaintiff's Motion
for Partial Summary Judgment.  (See Pl.'s Reply Br. in Supp. of Mot. for Partial
Summ. J. at 1-8.)  The Court has considered Plaintiff's arguments and will consider
the affidavits only to the extent they are proper, but denies Plaintiff's Motion to
Strike Defense Affidavits.

## I.    **BACKGROUND**

Plaintiff brought this action for legal malpractice against the Defendant law firm, Slutzky, Wolfe & Bailey, LLP, and two individual attorneys at the firm, Bernard Wolfe and William Lieberbaum (collectively referred to as the "Defendants").  Plaintiff alleges Defendants wrongfully represented Plaintiff while simultaneously representing one of its members in allegedly competing transactions.

Plaintiff is a real estate development company formed in 1997 to develop commercial shopping centers in the southeastern United States.  (Pl.'s Statement of Undisputed Facts in Supp. of Summ. J. ("PSF") ¶ 1.)  Plaintiff consisted of two members -- Paul Pensig and Salvatore Biondo.  (Id. ¶ 3.)  The operating agreement for Plaintiff provides:

> Except by the unanimous agreement of the Members which is evidenced in a writing, neither the Manager nor any other officer of the LLC shall have the authority to: . . .
>
> 6.3.6  Do any action in contravention of this Agreement;
> 6.3.7  Do any act which would make it impossible to carry on the Business of the LLC; . . .
> 6.3.9  Possess Property, or assign rights in specific Property, for other than a LLC purpose.

(PSF ¶ 11.)

On April 13, 1998, Plaintiff engaged the Defendant law firm to represent

Plaintiff.  (Id. ¶ 7.)  The engagement letter provided:

> In our representation, when requested by you, we will
> assist you in negotiating contracts and leases; assist you
> in various aspects of due diligence prior to the
> acquisitions, including, title examination, issuance of the
> title insurance commitment for both owner and lender,
> and review the ALTA survey; prepare the documentation
> for the acquisition of the properties; review and negotiate,
> where needed, the construction loan documents; provide
> the local counsel opinion letters required by the
> construction lenders; and after the closing of the
> acquisitions and the construction loans, continue to
> provide legal counsel to you on an as needed basis
> throughout the development of the shopping centers.

(April 9, 1998 Letter, attached as Ex. 2 to PSF.)  Defendants provided these

services to Plaintiff over the course of their representation of Plaintiff.  (PSF ¶ 8.)

Plaintiff alleges Mr. Biondo was prohibited, including by the operating

agreement, from participating in any real estate transactions other than for the

benefit of Plaintiff.  (PSF ¶ 15.)  Plaintiff claims that, despite this prohibition, Mr.

Biondo pursued deals with other entities for other real estate development

transactions apart from Plaintiff and without Mr. Pensig's knowledge.  (Id. ¶ 16.)

Plaintiff alleges Defendants represented Mr. Biondo in his pursuit and closing of

several transactions, including the "Liberty Deal," the "Spartanburg Deal,"[2] "Bells

Ferry Road," and "Lake Islands."  (Id. ¶¶ 20-21.)  Plaintiff alleges these deals were

opportunities in which Plaintiff could have, and would have, participated if they had

been brought to Plaintiff's attention.[3]  (Id. ¶ 17.)  Plaintiff claims Mr. Biondo's

pursuit of these opportunities outside of his relationship with Plaintiff was

detrimental to Plaintiff because it was not benefitted from the deals.  (Id. ¶ 18.)

Plaintiff alleges in late 2002 it became concerned that Mr. Biondo was

engaged in activity outside of Plaintiff's business which was adverse to and in

competition with Plaintiff's business.  (PSF ¶ 43.)  Plaintiff alleges it requested

information from Defendants regarding transactions entered into by Mr. Biondo, or

other entities associated with him, with the assistance of Defendants.  Plaintiff

---

[2] In a memorandum to Defendants regarding the Spartanburg Deal, Mr.
Biondo stated:  "Remember -- Paul [Pensig] not in this one, send info or bills
directly to me for transmittal . . . ."  (PSF ¶ 27.)

[3] Plaintiff also alleges Defendants represented Mr. Biondo and his wife in a
collection matter stemming from Mr. Biondo's bankruptcy.  Plaintiff claims
Defendants did not inform Mr. Pensig of Mr. Biondo's former bankruptcy or that
there had been a fraud finding against Mr. Biondo.  Plaintiff also claims Defendants
failed to tell it that Defendants had misrepresented to a creditor that Defendants
represented Mr. Biondo's employer.  (PSF ¶¶ 32-35.)

claims Defendants did not fully release the information requested because of client confidentiality concerns.  (Id. ¶¶ 44-47.)

Plaintiff filed this action on September 10, 2004, asserting claims against Defendants for legal malpractice, breach of contract and breach of fiduciary duty. Plaintiff's claims are based on "Defendants' conflicts of interests in representing [Plaintiff] while at the same time representing one of its members in transactions that were in direct competition to [Plaintiff] and in violation of [Plaintiff]'s Operating Agreement."  (Pl.'s Mot. for Partial Summ. J. at 1-2.)  Plaintiff submits an affidavit from Frank Beltran, an attorney in Georgia, in support of its claims.[4] (Beltran Aff., attached as Ex. 21 to Pl.'s Mot. for Partial Summ. J.)  Mr. Beltran expresses his opinion that the legal representation provided by Defendants to Plaintiff was "substandard and constituted a deviation from and a breach of the degree of care and skill required of the legal profession throughout the State of Georgia . . . , [and] constitutes legal malpractice, a breach of Defendants' contract of employment with [Plaintiff] and breach of each of the Defendants' fiduciary relationship with [Plaintiff]."  (Beltran Aff. ¶¶ 10-11.)  Mr. Beltran bases his

---

[4] Mr. Beltran's opinions are based on his "assumption that the factual allegations in the Complaint are true . . . ."  (Beltran Aff. ¶ 4.)

opinions on the following actions by Defendants: (i) simultaneously representing both Plaintiff and Mr. Biondo in competing transactions, (ii) failing to disclose to Plaintiff the conflicts of interest stemming from this joint representation, (iii) failing to disclose to Plaintiff the Defendants' knowledge of the competing transactions entered into by Mr. Biondo and his associated entities, (iv) failing to advise Plaintiff to seek other counsel with regard to the potential conflicts of interest, and (v) representing Mr. Biondo and his associated entities without obtaining a written waiver and consent from Plaintiff. (Id. ¶ 12.)

Defendants contend summary judgment is inappropriate because there are significant conflicts in the evidence regarding the ordinary care, skill and diligence of the Defendants, and on the grounds there is factual dispute whether Defendants' actions proximately caused damage to Plaintiff. Defendants submit affidavits from three Georgia attorneys -- Douglas Krevolin, Scott Fisher, and John Millkey -- in support of its contentions. (Krevolin Aff., attached as Ex. A to Defs.' Resp. to Pl.'s Mot. for Partial Summ. J.; Fisher Aff., attached as Ex. D to Defs.' Resp. to Pl.'s Mot. for Partial Summ. J.; Millkey Aff., attached as Ex. E to Defs.' Resp. to Pl.'s Mot. for Partial Summ. J.) These three attorneys all testify they reviewed the Plaintiff's operating agreement and do not consider it to be notice "of an exclusive

-6-

relationship such that Sal Biondo, as identified in this agreement, would not be permitted to participate in any commercial real estate transactions other than for the benefit of Atlantic Rim Equities."[5]  (Krevolin Aff. ¶ 5; Fisher Aff. ¶ 5; Millkey Aff. ¶ 5.)  They further testify that it is not unusual for one individual to be a member of more than one legal entity and to be involved in transactions with multiple entities. (Id. ¶ 6.)

## II.   DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact.  Herzog v. Castle Rock Entm't, 193 F.3d

---

[5]  Defendants also refer to correspondence between Messrs. Pensig and Biondo following the creation of Plaintiff.  This correspondence, which was not provided to Defendants before Defendants provided legal services to Mr. Biondo, sets forth an exclusive relationship between Mr. Biondo and Plaintiff.  (See May 2, 1998 Letter, attached as Ex. C to Defs.' Resp. to Pl.'s Mot. for Partial Summ. J.)

1241, 1246 (11th Cir. 1999).  Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial.  Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999).  The non-moving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings."  Id.

The Court must view all evidence in the light most favorable to the party opposing the motion and must resolve all reasonable doubts in the non-movant's favor.  United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am., 894 F.2d 1555, 1558 (11th Cir. 1990).  "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ."  Graham, 193 F.3d at 1282.  "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial."  Herzog, 193 F.3d at 1246. But, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

     B.    <u>Legal Malpractice</u>

To state a claim for legal malpractice under Georgia law, a plaintiff must establish:  (1) employment of an attorney; (2) failure of the attorney to exercise ordinary care, skill and diligence; and (3) damages proximately caused by that failure.  <u>Tante v. Herring</u>, 453 S.E.2d 686, 687 (Ga. 1994).  <u>See also</u> <u>Allen v. Lefkoff, Duncan, Grimes & Dermer</u>, 453 S.E.2d 719, 720 (Ga. 1995); <u>Maria v. Powell, Goldstein, Frazer & Murphy</u>, 612 F. Supp. 1507, 1511 (N.D. Ga. 1985) (quoting <u>Rogers v. Norvell</u>, 330 S.E.2d 392 (Ga. Ct. App. 1985)).[6]  "With respect to the 'ordinary care, skill and diligence' element, the law imposes upon persons performing professional services the duty to exercise a reasonable degree of skill and care, as determined by the degree of skill and care ordinarily employed by their respective professions under similar conditions and like surrounding circumstances."  <u>Allen</u>, 453 S.E.2d at 720 (quotation, citation and emphasis omitted).

---

[6]  "[T]he plaintiff must file with the complaint an expert's affidavit setting forth at least one negligent act constituting the alleged breach of duty and the factual basis for each claim of negligence."  <u>Tante</u>, 453 S.E.2d at 687 (citing O.C.G.A. § 9-11-9.1(a)).

Mere allegations that an attorney's conduct violates the Code of Professional Responsibility or Standards of Conduct, standing alone, cannot serve as the basis for a legal malpractice action.  Allen, 453 S.E.2d at 720.  However, "pertinent Bar Rules are relevant to the standard of care in a legal malpractice action," if they are "intended to protect a person in the plaintiff's position or [are] addressed to the particular harm suffered by the plaintiff."  Id. at 721-22.

Plaintiff argues Defendants had a duty to Plaintiff to exercise the utmost good faith and loyalty to their client and to act solely for its benefit.  (Pl.'s Mot. for Partial Summ. J. at 15-20.)  By representing Mr. Biondo in transactions that Plaintiff alleges were in direct competition with Plaintiff, Plaintiff claims Defendants violated their duty to Plaintiff.

Summary judgment on Defendants' liability for legal malpractice is not appropriate.  The parties present conflicting testimony regarding the care, skill and diligence owed to Plaintiff and exercised by Defendants.  There are a variety of issues of fact for a jury to resolve, including:  (i) Defendants' knowledge of Mr. Biondo's exclusive relationship with Plaintiff; (ii) the nature and scope of the relationship; (iii) the scope of Defendants' representation of Plaintiff and the resulting duties they owed Plaintiff; and (iv) Defendants' knowledge that

Mr. Biondo's outside activities were detrimental to and in conflict with Plaintiff's interests and any agreement between them.

Plaintiff also has failed to establish that damages resulted from Defendants' alleged legal malpractice.[7]  Although Plaintiff only moves for summary judgment as to liability, damages are an essential element of a claim for legal malpractice.  See Tante, 453 S.E.2d at 687.  "[A]n attorney is liable only for actual injury that his client has sustained, and an act of negligence alone does not create a cause of action in tort without damages . . . .  [T]he alleged negligence of the attorney must be the proximate cause of the damage to the client."  Maria, 612 F. Supp. at 1511 (quotation, citation and emphasis omitted).  The issue is whether a reasonable jury could find that Defendant's alleged legal malpractice "caused the plaintiff's injuries and whether [the attorneys] could have reasonably foreseen those injuries."  Id.

Plaintiff's only evidence of damage is Mr. Beltran's affidavit testimony and the deposition testimony of Defendant Lieberbaum.  Mr. Beltran's testimony regarding damages is conclusory and based only on the allegations as set forth in

---

[7]  To the extent Plaintiff's motion for partial summary judgment is a request for the Court to enter "summary judgment" on elements of Plaintiff's claim rather than the claim itself, the request is not proper.

the Complaint.  Furthermore, Defendant Lieberbaum's testimony is more ambiguous than claimed by Plaintiff.[8]  Accordingly, there are numerous issues of fact for a jury to resolve and summary judgment for Plaintiff on Defendants' liability for legal malpractice is not appropriate.  See Traub v. Washington, 591 S.E.2d 382, 386 (Ga. Ct. App. 2003) (finding jury issue exists as to whether attorney committed legal malpractice when he allegedly represented multiple clients after conflicts arose and took action adverse to a client).

C.     Breach of Contract

The parties do not separately address Plaintiff's various theories of recovery. Under Georgia law, "[a] cause of action against an attorney sounding in contract arises from the breach of a legal duty imposed by the contract of employment. . . .

_____

    [8] Plaintiff claims "Defendants have even admitted that deals that Mr. Biondo was pursuing outside of Client were detrimental to Client and that Client was not benefiting from those deals."  (Pl.'s Mot. for Partial Summ. J. at 5.)  Plaintiff cites Defendant Lieberbaum's testimony in support of this assertion.  However, the portion of testimony cited by Plaintiff is as follows:

    A:     I would agree with you that if he's doing deals with somebody other
           than [Plaintiff], then [Plaintiff] is not getting those deals.
    Q:     And they're not benefiting from that?
    A:     Clearly they're not benefiting or potentially being hurt by that, I agree.

(Def. Lieberbaum Dep. at 18.)

-12-

The tort cause of action for legal malpractice arises because the law imposes upon attorneys a duty to act with a certain degree of skill in performing their contractual duties to their clients."  Plumlee v. Davis, 473 S.E.2d 510, 513 (Ga. Ct. App. 1996).  Plaintiff's arguments in support of its motion are  better suited to a tort claim for legal malpractice, than to a breach of contract claim.  See generally Tante, 453 S.E.2d at 687 n.2 (finding plaintiffs asserted valid claim against attorney for breach of fiduciary duty, but "there is no basis for the [plaintiffs'] claim for breach of contract").  Because Plaintiff fails to specify which provision of its contract Defendants allegedly breached or the conduct giving rise to such breach, and, because there is conflicting evidence regarding the care, skill and diligence exercised by Defendants, summary judgment is not appropriate.

     D.    <u>Breach of Fiduciary Duty</u>

Plaintiff claims Defendants breached their fiduciary duty to Plaintiff by representing Mr. Biondo in deals apart from Plaintiff and allegedly in direct conflict with Plaintiff.  The fiduciary duty in this context, Plaintiff claims, arises from the attorney-client relationship.  See Tante, 453 S.E.2d at 687.

"Whether and to what extent a lawyer has a fiduciary duty to a client depends on the facts in each case."  Tante, 453 S.E.2d at 688 n.4.  As Plaintiff's

fiduciary, Defendants "owed [it] fiduciary duties to show loyalty, to exercise the utmost good faith, to apply [their] best skill, zeal, and diligence in representing [it], and to avoid interests or actions that were incompatible with [the client]'s." Tunsil v. Jackson, 546 S.E.2d 875, 878 (Ga. Ct. App. 2001) (citing Tante v. Herring, 453 S.E.2d 686 (Ga. 1994)).

Here, there are disputes of fact as to the scope of Defendants' representation of Plaintiff, whether Plaintiff would have accepted the opportunities it contends it was denied if it had such opportunity, whether Defendants' actions damaged Plaintiff, or whether Defendants acted in good faith.  Under such circumstances, summary judgment is not appropriate.  See Jerry Lipps, Inc. v. G. H. Postell, 229 S.E.2d 78, 81 (Ga. Ct. App. 1976) (examining relationship between law firm and client and finding attorneys did not breach fiduciary duty to client by accepting representation of potentially adverse party because firm's relationship with client was limited; "[t]he fiduciary relationship of the parties must be confined to the subject matter of the contract.").  See also Tante, 453 S.E.2d at 688 n.6 (noting for breach of fiduciary duty claims that "ordinarily there would be questions of fact regarding liability").

III.   **CONCLUSION**

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Partial Summary

Judgment as to Liability of Defendants [27] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike Defense

Affidavits [45] is **DENIED**.

**IT IS FURTHER ORDERED** that the parties shall file their proposed

consolidated pretrial order on or before January 23, 2006.

**SO ORDERED**, this 20th day of December, 2005.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE